## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

**DEREK RUNION AND**
**FLORIDA CAPITAL ASSETS,**
**LLC,**

      **Plaintiff,**

**v.**                                  **CASE NO.: 20-CV-00718-JLB-MRM**

**PAUL BERNARD, IBEX ENERGY,**    **JURY TRIAL DEMANDED**
**INC., and JOHN BIALLAS,**
      **Defendants.**

_____/

### PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiff's Derek Runion and Florida Capital Assets, LLC, by and through his

undersigned counsel, hereby submits this Second Amended Complaint, pursuant to the

Courts Order (Doc. 43) against Defendants Paul Bernard, Ibex Energy, Inc., and John

Biallas, individually and collectively, and states as follows:

### NATURE OF THE ACTION

1.     This is a diversity action involving tort claims and statutory claims

under Florida Law.  Plaintiff asserts claims against Defendants for Breach of contract,

unjust enrichment, conversion, civil theft, and fraud.

### THE PARTIES

2.     Plaintiff Derek Runion is an individual. Derek Runion resides in Florida

and is a citizen of the State of Florida.

3.     Plaintiff Capital Assets, LLC, is a Florida Limited Liability, with its

principal place of business at 1430 SE 16th Pl Suite A Cape Coral, FL 33990

4.     Defendant Paul Bernard (hereinafter "Bernard") is an individual and

president of Ibex Energy, Inc.  Upon information and belief, Bernard is a resident of California and citizen of the State of California. On information and belief, Bernard is

5.       Ibex Energy, Inc., (hereinafter "Ibex") is a corporation, with its principal place of business at 25 Crescent Drive, Pleasant Hill, California 94523.

6.       Defendant John Biallas (hereinafter "Biallas") is an individual.  Upon information and belief, Biallas is a resident of Saint Charles, Illinois residing at 3N918 Sunrise Ln Saint Charles, IL 60174-5081 and citizen of the State of California.

## JURISDICTION AND VENUE

7.       This Court  has subject matter jurisdiction in this action pursuant to 28 USC 1332 because the Plaintiff and Defendants are citizens of different States and there is more than $75,000.00 is in controversy.  Plaintiff seeks $200,000.00 due under the contract and penalties for the contracts breach in an additional amount of $200,000. Plaintiff seeks treble damages and attorneys fees via civil theft pursuant to Florida Statute.

8.       The Court has specific personal jurisdiction over Defendants because they have contacts with the State of Florida, and have committed tortious acts directed into the State of Florida through this transaction.

9.       Pursuant to the contract, Defendants Bernard, Ibex Energy, Inc., and Biallas expressly consented to the exclusive jurisdiction of the Middle District of Florida. Defendants Bernard, Ibex Energy, Inc., and Biallas signed an Agreement Plaintiff wherein the parties consented to the exclusive jurisdiction of the Federal Court of the Middle District of Florida for any dispute involving the Agreement.

10.       Venue is proper in this Court pursuant to 28 USC 1391 as a substantial

part of the events giving rise to Plaintiff's claims occurred in Florida where the Plaintiff is located, which is within the judicial district. Moreover, as explained above, Defendants Bernard, Ibex, Inc., and Biallas, agreed to venue in this Court.

## **FACTS COMMON TO ALL COUNTS**

11.     On or about December 4, 2019, Derek Runion received a phone call from individuals named Danny Caballer, Alice Constantine, and Brian Bargren.

12.     Caballer and Constantine advised they were seeking $200,000.00 USD for purposes of purchasing and reselling petroleum goods. The goods in question were jet fuel A-1. Jet fuel A-1 is a highly combustible, very refined petro product. A-1 is used for jets, jetliners, and other aerial transporters. This product was alleged to be coming from Gazprom Neft PJSC. Gazprom is a Russian Federation corporation and is a large scale producer of petro products.

13.     The sales by Gazprom Neft PJSC to other parties is referred to a being "refinery direct." It was learned after the transaction and funding by the Plaintiffs, that neither Gazprom Neft PJSC nor any petro-chemical terminal and storage companies take deposits or "up-front" monies for transactions. Deposits are taken when the petroleum has arrived for terminal and storage, has been successfully tested (an injection and DTS report) and approved by a buyer.

14.     From at least early 2019 until today, Paul Bernard, personally and through his Corporate entity IBEX Energy, Inc. as well as  John Biallas acting as escrow attorney, and others both known and unknown, confederated and conspired to commit fraud in the oil and gas industry by claiming to have oil and gas rights available for re-sale seeking up-front payments of monies for the terminaling and storage of said oil and gas.

The named Defendants , acting in concert, sought persons to pay up-front fees for the terminaling and storage of a Gazprom Neft PJSC allocation.

15.     Each of the Defendants  had individual roles as well as roles within the conspiracy.

16.     The co-conspirators utilize Paul Bernard, acting in his individual capacity and also acting as president of Ibex Energy, Inc., and John Biallas, Esquire, to offer legitimacy to the fraud by referencing "transactions about to close, utilizing a lawyer's escrow, and discussing how the parties have discussed the matter and shown documents to an expert in the industry whom has reviewed and approved the same."

17.     Ibex Energy, Inc., is a closely held, single person corporation.  Said single person is on information and belief, Paul Bernard.

18.     The Defendants also utilize an individual named Damon Kelly, acting in an individual capacity, and as president of Colonial Grade Trading, LLC and Black Wolf Energy, LLC purports to be an expert in the field of petrochemicals so as to verify documents and procedures in petro-chemical transactions.

19.     Then, and lastly, to receive payment, the Defendants utilized an individual named David McGee and Q&S Imports, LLC, a Limited Liability Company in Georgia with no connection to petro-chemicals, nor to the terminal and storage of fuels -- to receive the buyer or investor monies.

20.     With Paul Bernard in the leadership role of the scheme these persons

formed the enterprise, each person or persons with a specific role to engage in and further the scheme to defraud, and to commit the tortious acts including those toward the Plaintiffs in this ccause of action.

21.    While attempting to find a source of monies to further a petrochemical transaction, Paul Bernard, Ibex Energy, Inc., and John Biallas were made aware in June of 2019 that their transaction was fraudulent and the documents they were utilizing as proof or viability of the transaction were fraudulent documents. This was done in communications through a third party to them, and in particular, Biallas, as the attorney for the escrow was placed on notice of the fraudulent transaction that was transpiring under Bernard and Ibex.

22.    Despite being advised the transactions and documents were fraudulent, Paul Bernard, Ibex Energy, Inc., and John Biallas continued to seek investors for these Transaction, which would then include the Plaintiffs.

23.    On or about December 4, 2019, inviduals Danny Caballer and Alice Constantine communicated via phone to Runion for purposes of convincing Runion to Invest in Ibex Energy, Inc., by making a $200,000.00 investment for the purpose of paying for the terminal and storage of jet fuel pursuant to a buy and sell contract for the purchase and sale of jet fuel Bernard and Biallas insisted existed.

24.    Danny Caballer and Alice Constatine had a phone conversation concerning this investment on December 4, 2019.

25.    After that phone conversation on December 4, 2019, Alice Constantine called Runion to discuss (again) the transaction.On that second call, Alice Constantine, Danny Caballer, Brian Bargren, and Paul Bernard were on the line with Runion and

participated in the assurances of the deal for the fuel if Runion invested the money.

Runion exchanged contact information with Paul Bernard. Bernard indicated he was the

president and owner of Ibex Energy, Inc. Bernard said he was involved in the petro-

chemical industry. Bernard indicated he (Bernard) had multiple petro-chemical

transactions ongoing, and Bernard said he had used Biallas Interest on Law Trust

Account (IOLTA) to hold and utilize funds for these transactions.

26.     Bernard indicated he (Bernard) had brought individually, $900,000.00, to

aid one of his three transactions. Biallas verified Bernard's representations to Runion.

Bernard also indicated he had an expert he consulted with for purposes of verifying

the transactions.

27.     Bernard communicated to Runion that he needed the $200,000.00 USD for

purposes of paying a deposit for the purchase and resell of the two million barrels of jet

fuel.Bernard advised Runion he needed the $200,000.00 to pay a company by the name

of Terminal & Storage, located in Galveston, Texas, so as to offload and hold the

petrochemicals.

28.     Bernad, Biallas, and the co-conspirators knew Terminal & Storage was a

fraudulent Limited Liability Company established with the purpose of engaging in

fraud and to further the fraudulent petrochemical transactions of the co-conspirators.

29.     The contact person for Terminal & Storage, LLC, in Galveston, Texas,

was David McGee. The first name is fraudulent and Mr. David McGee used a false name

to further the fraud. Terminal & Storage maintained a world wide web presence at the

following  link: www.terstoragellc.com/contact.html. Upon information and belief this

was utilized to convince Runion of the legitimacy of the deal.

30.     After the transaction, on investigation and information and belief, the Plaintiffs came to the knowledge that the Terminal & Storage, LLC reflected on itse website was a fraudulent Texas corporation which hijacked a real Texas corporation Terminalling & Storage, LLC, which has nothing to do with the ownership of equipment or involvement in the petrochemical industry. In other words Bernard, with knowledge of Biallas presented fraudulent information to Runion in order to gain the $200,000.00 investment.

31.     Runion relied upon the presentation of Bernard and Biallas that all of these representations were accurate, and he reasonably relied upon such representations by the Defendants, and those directed by Bernard to convince  him of the legitimacy of the transaction.

32.     Depsite prior knowledge their documents and allocation of jet fuel was fraudulent, neither Paul Bernard, John Biallas,  nor any member of Ibex Energy, Inc. advised Runion of such falsity.

33.     Bernard offered to Runion (in exchange for payment of $200,000.00) a return of $300,000.00 within sixty days, or a return of $400,000.00 if payment was received between days sixty and ninety. Bernard proposed to Runion a "Proceeds Sharing Agreement (hereinafter PSA)." The PSA gave Ibex and Bernard 60 (sixty) days from December 4, 2019, to close the transaction and pay Runion and FCA $300,000.00 ($200,000 initial investment with $100,000.00 additional monies as profit for the investment).

34.     If the transaction did not close within 60 (sixty) days, Ibex and Bernard were to pay $400,000.00 to Runion and FCA.

35.     The PSA also stated if Ibex and Bernard completed any "other similar type" transaction, Ibex and Bernard were to direct Biallas to pay Runion and FCA from those monies. Based upon all of these representations, Bernard signed the PSA and Runion signed the PSA. As well,  Biallas also signed the PSA. Biallas, therefore, with Bernard, contracted to pay Runion the monies.

36.     As inducement to receive the monies from Runion, Bernard made numerous untrue representations to Runion including that Bernard advised Runion the contract with Terminal & Storage had a "no-splash" provision. Bernard explained this meant if no petro-chemicals made it into the tank, then the monies (the $200,000.00) would be fully refunded.

37.     The Plaintiff determined after the breach of the PSA that there never was a contract between Bernard, IBEX, Biallas, nor any of the co-conspirators and Terminaling & Storage, LLC.

38.     The documents included a proof of product for sale from a petroleum refinery.  See Attached as Exhibit "A (Previously filed)." Said documents were forged by Bernard,  and possibly other parties on Bernards and the other Defendants behalf. Such documents were fraudulent as presented to Runion.

39.     Bernard, Biallas, and Ibex Energy, Inc., were advised the documents were Fraudulent in June 2019 via the Plaintiffs.

40.     Bernard, Biallas, and IBEX knew the documents to be Fraudulent were presented.

41.     As additional inducement, Bernard also offered Runion a piece of property

in Sioux City, Iowa as collateral. Said property, with an address of 722 Nebraska Street, Sioux City, Iowa, was not owned by Bernard. Bernard failed to advise Runion that such property was already subject to demolition proceedings by Woodbury County, Iowa government and had been for a period of twelve months before the transaction with Runion.

42. What was not told to Runion, was that Bernard was under an agreement and obligation to rehabilitate the same property from six years prior. Bernard had failed to comply with the County's orders, and the property was scheduled for demolition.

43. At the time Bernard offered the property as collateral for Runions monies, Bernard knew he did not and could not comply with the counties orders and the property was subject to demolition.

44. As the property was subject to demolition, the property value was nominal. In fact the Plaintiffs later learned after the default on the SPA, that the Oklahoma property had been subject to several buy/sell offers or transactions of less that $20,000 each.

45. Knowing Bernard could not complete the rehabilitation of the property, Bernard, as further inducement, communicated to Runion an architectural letter from CMBA Architects – dated March 28, 2019, indicating the value of the property as rehabilitated would be in excess of 4.35 million USD. The letter as attached as Exhibit "B (Previously filed)." Such representation of collateral, ownership and value by Bernard were false when presented to Runion.

46. As further assurance to Runion, Bernard also communicated to Runion

that Bernard had an escrow attorney and that the escrow attorney's name is John Biallas, Esquire. Biallas spoke to Runion on numerous occasions during this transaction.

47.     Biallas communicated to Runion that Bernard had petrochemical contracts, to include a contract wherein Bernard contributed $900,000.00 of his own monies, said information which was confirmed by Biallas. Biallas communicated he verified the information presented by Bernard.

48.     Biallas fraudulently bolstered Bernard by explaining to Runion – that Bernard and Biallas -- had consulted with a petrochemical expert and the fraudulent Bernard documents were in fact documents utilized by the petrochemical industry.

49.     Biallas indicated he had personal relationships with the vendors in this transaction.

50.     Biallas said he had completed with the same vendors a prior transaction involving chinese buyers. On information and belief, this was another false representation.

51.     Biallas used his position as an attorney licensed in the State of Illinois to induce Runion that the transaction was legitimate.

52.     Biallas advised Runion he was escrow agent for at least three other petro-chemical transactions, one of which Bernard allegedly was personally financially involved.

53.     Bernard and Biallas fraudulently induced Runion to send the $200,000.00 payment to Biallas IOLTA account.

54.     A contract, attached as Exhibit "C (Previously filed)," established the terms of the transaction.

55.     Shortly after, Biallas received a wire from Runion.

56.     On December 5, 2019, Biallas sent the first wire for $100,000.00 to Q&S Imports, LLC.

57.     As Q&S Imports, LLC, was located in Georgia, Runion contacted Biallas to discuss why the funds went to a company other than Terminal & Storage, LLC where the funds were supposed to go for the transaction.

58.     Runion explained to Biallas that he had found out that Q&S Imports, LLC was located in Georgia, the corporation was registered to an apartment, and that he, Runion, believed there was fraud and this had nothing to do with the petrol transaction.

59.     Biallas was clearly notified by Runion about the fraud after the first wire.

60.     Runion asked Biallas and Bernard on numerous occasions between December 4, 2019, and December 11, 2019, to send him copies (redacted if necessary to protect buyer and supplier information) to verify the transaction.

61.     Neither Bernard nor Biallas sent anything to confirm the request made by Runion.

62.     Bernard then hired Biallas to enter into an attorney-client relationship. Bernard advised Biallas to cease contact and communication with Runion.

63.     Bernard then ordered Biallas to send and payout the balance of the monies.

64.     Despite Runion advising Bernard, Biallas, and Ibex Energy, Inc.'s transaction was fraudulent, Bernard and Biallas continued with their fraudulent

transaction. Biallas sent subsequent wires for another $90,000.00. All wires were distributed in violation of the contract. The subsequent wires were sent without Runions permission.

65. Biallas paid himself $5,000.00 from the balance of those monies.

On December 9, 2019, Bernard provided Runion an update whereBernard advised:

    a. He had been on the phone with several participants in his current petroleum transaction;
    b. The storage vendor has been paid off and sent confirming documents to the refinery/seller;
    c. The refinery has acknowledged receipt of those documents and are in the process of generating then signing the next set of documents.

66. None of the aforementioned documents were produced to Runion.

67. In fact, none of Bernard's alleged transactions that he communicated to Runion were ever completed.

68. Despite numerous telephonic demands for return of the funds by Runion, the monies have not been returned.

69. Despite written correspondence, no monies have been returned or paid to Runion.

70. During the course of such conduct, Paul Bernard used Ibex Energy, Inc., for the sole purpose of committing fraud.

71. The fraudlent and improper use of the corporate form of Ibex Energy, Inc., by Bernard caused injury to the Plaintiffs.

72. As a result of the fraud, the Plaintiffs should be allowed to peirce the corporate veil of Ibex as to Bernard, and Bernard should be individually liable for any damages caused to the Plaintiffs, as Ibex is the alter ego of Bernard, under his sole control, for purposes of the fraud complained of as set forth above.

73. On February 20, 2020, the Plaintiff, Runion, through counsel, delivered written demand to Bernard pursuant to Fla.Stat. 772.11 (Remedies for Civil Theft) as to the amount of money taken, including the demand that treble damages would be sought if payment were not made within thirty days of such notice. No such payment was made by Bernard.

## COUNT I
## BREACH OF CONTRACT
**(Against Defendants Paul Bernard, John Bialas and IBEX Energy, Inc.)**

74. This is an action for breach of contract.

75. Derek Runion and Paul Bernard (at least execution wise) signed on behalf of Ibex Energy, Inc., entered into a written Contract on December 4, 2019, attached as Exhibit "C."

76. Additionally, according to the Contract, John Biallas, Esquire, had certain duties as the escrow and control agent under the contract, including the taking of such money from Runion for FCA, and distribution of such funds. As such he had contractual duties to the Plaintiffs for performance of his obligations as counselor and control of such monies.

77. As well, Paul Bernard's relation to Ibex is of such control that the Company is is the alter ego of Bernard, under his sole control, and such corporate veil is subject to piercing due to his level of control, and thus Bernard is personally liable for the breach of contract individually.

78. That written contract required payment of $300,000.00 on or before February 4, 2020.

79. The Defendants failed to pay the Plaintiff on or before February 4, 2020.

80. That the written contract required a payment of $400,000.00 on or before March 4, 2020, if the payment of $300,000.00 was not made by February 4, 2020.

81. That the Defendants failed to pay the Plaintiff on or before February 4, 2020, and failed to pay March 4, 2020.

82. Defendants failed to comply with the terms of the Agreement as Defendants never made a payment to Plaintiff.

83. Plaintiff has complied with all conditions of the contract.

84. Paul Bernard through Ibex, and John Biallas breached the contract by engaging in fraud, misappropriating Runion's monies, and failing to pay or return any monies timely.

85. Defendants Bernard through Ibex and Biallas are liable in damages in excess of $200,000.00, the exact amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment in favor and against Defendants, jointly and severely as follows:

A. Damages in the amount to be determined at trial, in excess of $200,000.
B. Pre-judgment interest from the date the monies were due;
C. Attorney's fees and costs incurred in this matter;
D. Any other and further relief this court deems proper.

### COUNT II
### CIVIL THEFT
**(Against Defendant Paul Bernanrd and IBEX Energy, Inc.)**

86. This is an action for civil theft pursuant to Fla. Stat. 772.11

87. Defendants have obtained and/or used $200,000.00 of Plaintiff's money without permission due to the fraud which occurred in this matter where.

88. By his actions and assurances to the Plaintiff Runion, that he (Bernard)

had an aviation fuel order, and supply, which were false when made, he was able to convince Runion to invest $200,000 and enter into the Proceeds Sharing Agreement. Such proceeds were obtained by Bernard through the PSA into the lawyers trust account. And on information and belief were distributed pursuant to the actions and direction of Bernard to people and entities, potentially including himself, thus wrongfully taking the property of the Plaintiff.

89.     Defendants did unlawfully and knowingly use or endeavor to use Plaintiff's money and did knowingly deprive or endeavor to deprive Plaintiff of its money with intent to temporarily or permanently deprive Plaintiff of its right to the money and benefit thereof, all for Defendants' own use, or the use of any person not entitled thereto, in violation of Florida Statute 812.04. Defendants intentionally deceived Plaintiff by descriptions and documents that they had the access to aviation fuels, when they did not.

90.     Pursuant to Florida Statute 772.11, Plaintiff made a final written statutory demand for its property on February 25, 2020.  A copy of the statutory demand sent to Defendant, Paul Bernard, are attached hereto as composite Exhibit "D (Previously Filed)."

91.     To date, and despite demand by Plaintiff, defendants have failed to return Plaintiff's property, being the money involved.

92.     As a direct and proximate cause of defendants' unlawful actioins, Plaintiff was and continues to be deprived of its right to its property and the benefit therefrom, and has suffered damages in the amount of $200,000.00.

93.     Pursuant to Florida Statue 772.11, Plaintiff is entitled to treble damages in

the minimum amount of $600,000.00 for the theft of its monies committed by defendant.

94.     As a direct result of Plaintiff depriving Plaintiff of its rights to possess and

enjoy its money and the benefit therefrom, and defendants continuing failure and refusal

to return Plaintiff's property, Plaintiff was required to retain counsel and obligated to pay

its counsel a fee.

95.     Plaintiff is entitled to an award of attorney's fees pursuant to Fla. Stat.

772.11.

WHEREFORE, Plaintiff demands judgment in favor and against Defendant's,

jointly and severely as follows:

E.  Treble damages in the amount of $600,000.00
F.  Pre-judgment interest from the date the monies were paid;
G.  Attorney's fees and costs incurred in this matter;
H.  Any other and further relief this court deems proper.

## COUNT III
## CONVERSION
### (Against Defendants Paul Bernard, John Biallas, and IBEX Energy, Inc.)

96.     This is an action for conversion of the Plaintiff's property by the

Defendants.

97.     At all times herein mentioned, Plaintiff was, and still is, the owner and

was, and still is entitled to immediate possession of cash in the amount of $200,000.00

which was wrongly misappropriated –by the actions of the Defendants, through their

communications, assurances, and actions including but not limited to -- as follows:

a.  Defendants knew Gazprom Neft PJSC did not utilize brokers or third parties in their transactions;
b.  That Damon Kelly was not an expert in the oil and gas industry;
c.  That Terminal & Storage, LLC, was a corporation which did not operate in the petrochemical business;
d.  That Defendants did not have other petrochemical transations ongoing;

  e. That the Defendants did not utilize the personal funds for any other ongoing transactions and none of the actions promised in the PSA;

  f. That Defendants were advised that the transaction presented to Plaintiff was fraudulent in nature prior to seeking to utilize Plaintiff's funds. They none the less utilized such funds to pay to parties, which had nothing to do with the transaction for the aviation fuel as represented to the Defendants.

  98. Since December of 2019, Defendants have knowingly, unlawfully, maliciously, and with intent to indefinitely or permanently deprive Plaintiff of its property, took possession of Plaintiff's property, and utilized the same in a fraudulent manner.

  99. Defendants have, without the consent of the Plaintiff, converted to their own use the above mentioned property.

  100. Plaintiff made a written demand for return of its property, in January of 2020, but Defendants have failed to return Plaintiff's property.

  101. As a direct and proximate result of the wrongful acts of the Defendants, Plaintiff has suffered general damages in the amount of at least $200,000.00.

  102. As a direct result of Plaintiff's conversion of Plaintiff property, and Defendants continuing failure and refusal to return Plaintiff's property, Plaintiff was required to retain counsel and its obligated to pay its counsel a fee.

  103. Plaintiff is entitled to an award of attorney's fees pursuant to Fla. Stat. 57.105.

  WHEREFORE, Plaintiff demands judgment in its favor and against the Defendants, jointly and severally as follows:

  A. Damages in the amount of $200,000.00; and
  B. Pre-judgment interest from the date the monies were paid;
  C. Attorney's fees and costs incurred in bringing this action;
  D. Any other and further relief this court deems proper.

## COUNT IV
## FRAUD IN THE INDUCEMENT
**(Against Defendants Paul Bernanrd, John Biallas, and IBEX Energy, Inc.)**

104.    This is a cause of action for civil conspiracy.

105.    Defendants did agree and conspire to willfully injure Plaintiffs through the fraud committed by Paul Bernard, John Biallas, and Ibex Energy, Inc.

106.    Defendants knowingly, willfully, and intentionally conspired and agreed to present forged documents as well as made knowingly fraudulent statements to the Plaintiff.  Defendants fraudulent statements include but are not limited to:

     a.    Defendants knew Gazprom Neft PJSC did not utilize brokers or third parties in their transactions;
     b.    That Damon Kelly was not an expert in the oil and gas industry;
     c.    That Terminal & Storage, LLC, was a corporation which did not operate in the petrochemical business;
     d.    That Defendants did not have other petrochemical transations ongoing;
     e.    That the Defendants did not utilize the funds for the represented aviation fuel transaction communicated nor to any other ongoing transactions;
     f.    That Defendants were advised that the transaction presented to Plaintiff was fraudulent in nature prior to seeking to utilize Plaintiff's funds even after being advised of such.
     g.    That Bernard had no rights when he attempted to further assure the Plaintiff of collateral protection to the property located in Oklahoma was not of any value as he presented in the architects valuation presented to the Plaintiff as assurance on the investment of the monies in the amount of $200,000.

107.    Defendants never had the rights presented and communicated to the Plaintiffs, as to the Gasprom Aviation fuel, and had no rights for delivery or sale as presented by the Defendants to entice the Plaintiffs to tender the $200,000.00 for the delivery and storage of the Aviation fuel, or the ability to sell such, when they had no such rights.

108.     This was all done by the Defendants with the intent to commit fraud against the Plaintiff. Defendants knew they had no such rights or ability to gain the aviation fuel and sell such, when they made such communications to the Plaintiffs.

109.     The documents from Gazpron Neft are fraudulent, do not present valid proof of product, and in fact, did not provide proof of a petroleum transaction.

110.     The statements made by Defendants are fraudulent in that they represented petroleum transactions which were non-existent and that Defendants knew were fraudulent. Such statements, documents and communication were forwarded to the Plaintiffs and made on or about December 2019 as described herein.

111.     Such Defendants intended for the Plaintiff to rely on the fact the fraudulent Statements and the fraudulent and forged documents were real and that a petroleum transaction was taking place based on the documentation.

112.     Defendants presented the fraudulent statements and the fraudulent documents to the Plaintiff with the express purpose of inducing the Plaintiff to act thereon, i.e., to make the payment of $200,000 on the fraudulent transactions.

113.     Plaintiff relied on those fraudulent statements and fraudulent documents and made a payment to the Defendant in the amount of $200,000.00.

114.     Defendants knew or should have known that the petroleum transaction was not legitimate, Defendants representations were fraudulent, and that the documents were fraudulent and/or forgeries.

115.     Defendant's participated in the fraud by making false statements to further induce Plaintiff to pay the monies.

116.     Defendants knew the statements to be false and intended for Plaintiff to

rely upon them.

117. Plaintiff, at the time, believed Defendants, and did in fact rely upon them.

118. The actions of these Defendants, constitute a civil fraud justifying

an award of compensatory, consequential damages and special damages.

119. The Defendants committed unlawful acts in furtherance of the conspiracy

and there was actual damages to the Plaintiff as a result of the conspiracy in the form of

the wrongful taking of Plaintiffs money, specifically $200,000.00.

WHEREFORE, Plaintiff demands judgment in its favor and against the

defendants, jointly and severally as follows:

A. Damages in the amount of $200,000.00; and
B. Pre-judgment interest from the date the monies were paid;
C. Attorney's fees and costs incurred in bringing this action;
D. Any other and further relief this court deems proper, including punitive
   damages.

### COUNT V
### FRAUD
### (Against all Defendants)

120. Defendants committed fraud upon Plaintiffs during the PSA agreement

and in all communications, and documents presented in the transaction as to the rights

and status to the aviation fuel deal.

121. Defendants knew the statements, made on or about December 2019 which

were made to Plaintiff were false, and were made with the intent to induce Plaintiff to

provide $200,000.00 to the Defendants, and were made to defraud Plaintiffs by

misleading the Plaintiff into such a transaction and the PSA.

122. Defendants knew of the fraud being committed by Bernard and Biallas

by knowingly making false statements to indue Plaintiff to pay the monies and advance

the fraud. Said False statements include but are not limited to the following which the

Defendants knew to be false when made:

    a. Defendants knew Gazprom Neft PJSC did not utilize brokers or third parties in their transactions;
    b. That Damon Kelly was not an expert in the oil and gas industry;
    c. That Terminal & Storage, LLC, was a corporation which did not operate in the petrochemical business;
    d. That Defendants did not have other petrochemical transations ongoing;
    e. That the Defendant's did not utilize the funds provided by the Plaintiff for any other ongoing transactions;
    f. That Defendants were advised that the transaction presented to Plaintiff was fraudulent in nature prior to seeking to utilize Plaintiff's funds.
    g. That Bernard had no rights when he attempted to further assure the Plaintiff of collateral protection to the property located in Oklahoma was not of any value as he presented in the architects valuation presented to the Plaintiff as assurance on the investment of the monies in the amount of $200,000.

123. Additionally, Defendants knew the documents provided to Plaintiff and

referenced to Plaintiff were false, and were made with the intent to induce Plaintiff to

provide $200,000.00 to the Defendants, and were made to defraud Plaintiff.

124. Plaintiffs relied on the material misrepresentations made by Defendants.

125. By participating in the fraudulent scheme, Defendants knew of each

others fraud, and each defendant assisted the other in the execution of such fraud.

126. As a direct and proximate result of the fraud committed upon Plaintiff,

Plaintiff has been damaged.

127. By the use of such false communications to the Plaintiffs, the Defendants

committed fraud against the Plaintiffs.

WHEREFORE, Plaintiffs demands judgment in its favor and against the

Defendants, jointly and severally as follows:

A. Damages in the amount of $200,000.00; and
B. Pre-judgment interest from the date the monies were paid;
C. Attorney's fees and costs incurred in bringing this action;
D. Any other and further relief this court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff, by the undersigned, Alex R. Stavrou, P.A., hereby demands a trial by jury on all matters properly triable by jury under the laws of the United States and the State of Florida.

Dated: May 11, 2021

Respectfully Submitted,

***/S/ ALEX R. STAVROU, ESQ.***
_____
ALEX R. STAVROU, ESQUIRE
The Law Office of Alex R. Stavrou, P.A.
300 South Hyde Park Ave.
Tampa Florida, 33606
(813) 251-1289x1
fax (813) 489-2528
FL BAR # 0108390
Attorney for the Plaintiff
alex@alexstavrou.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 11, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record by CM/ECF or in some authorized manner for those counsel or parties who are not authorized to receive electronic notices.

/s/ Alex R. Stavrou
Alex R. Stavrou, Esquire